# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

David Hoch,

                    Plaintiff,

      v.

Mid-Minnesota Management Services Inc.
d/b/a Collection Resources,

                    Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-2445 ADM/LIB

_____

Nicholas R. Nowicki, Esq., McDonough & Nowicki PLLC, Minneapolis, MN, on behalf of
Plaintiff.

James I. Roberts, Esq., Roberts Law Office, St. Cloud, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On November 20, 2015, the undersigned United States District Judge heard oral

argument on Defendant Mid-Minnesota Management Services Inc., d/b/a Collection Resources'

("Defendant") Motion for Summary Judgment [Docket No. 23].  For the reasons set forth below,

Defendant's Motion is granted in part and denied in part.

## II.  BACKGROUND[1]

This case arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692, et. seq.  Plaintiff David Hoch ("Plaintiff") alleges Defendant violated the FDCPA by

repeatedly attempting to collect a debt he did not owe.  The debt was for dental services incurred

by his former wife Dasina Hoch after the Hochs were no longer married.

---

[1] On a motion for summary judgment, the Court views the evidence in the light most
favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

**A.  Services Provided by Dentistry By Design, LLC After Marriage Dissolution**

David and Dasina Hoch dissolved their marriage in January 2007.  Hoch Aff. [Docket No. 31] ¶ 3.  During their marriage, neither David nor Dasina Hoch received dental services from  Dentistry By Design LLC ("Dentistry By Design") or its predecessors.[2]  Id. ¶¶ 4–5.

On or about December 28, 2011, nearly five years after the Hochs' marriage was dissolved, Dasina Hoch began receiving dental services from Dentistry By Design.  Rizvi Aff. [Docket No. 26] ¶ 5, Exs. 1–2.[3]  The services were provided at a reduced charge because she was a friend of a Dentistry By Design staff member.  Id. ¶ 6, Ex. 1 ("Account History Report") (showing credit adjustments for "Professional Courtesy").

Dasina Hoch's Medical History Form with Dentistry By Design reflects a patient account number of 8846.  See id. Ex. 2 at 1.  Her completed Patient Registration Form specifies that she (the patient) is the "Responsible Party" on this account.  See id.  The Patient Registration Form includes a space for the name, address, and phone number of a "Responsible Party . . . other than the patient."  See id.  This portion of her Patient Registration form was left blank.

Dasina Hoch's dental services were billed to account number 8846.  See id. Ex. 1.  All payments for her services were made by Plaintiff and not by Ms. Hoch.  Id. ¶ 9, Exs. 1, 4. Plaintiff made the payments from his personal checking account and sometimes (but not always) referenced account number 8846 in the memo line of the checks.  See generally id. Ex. 4. Plaintiff avers that he voluntarily made payments to Dasina Hoch's account to assist her

---

[2] For the purposes of this Order, Dentistry By Design LLC and its predecessors are collectively referred to as "Dentistry By Design."

[3] Unsealed, redacted versions of Exhibits 2 and 4 of the Rizvi Affidavit are located in Docket No. 29.

financially.  Hoch Aff. ¶¶ 14–15.  He further avers that although he voluntarily made payments

on her behalf, he did not agree to be financially liable for Dasina Hoch's charges.  Id. ¶ 15.

On March 19, 2012, Plaintiff also began receiving services from Dentistry By Design.

Rizvi Aff. ¶ 7.  Plaintiff's Medical History Form with Dentistry By Design reflects that his

patient identification number was 9241.  See id. Ex. 3 at 2.  On his first day as a patient, Plaintiff

signed an Authorization and Financial Agreement form representing that he and his dependents

had insurance, that he assigned all insurance benefits to Dentistry By Design, and that he agreed

that he was "financially responsible for all charges, whether or not paid by insurance."  Id. Ex. 3

at 1.  Although Defendant characterizes this form as a personal guarantee for Dasina Hoch's

account, the form does not reference Dasina Hoch or her account number and does not include

words such as guarantee, guarantor, obligor, or similar language to suggest that Plaintiff agreed

to be responsible for his ex-wife's dental charges.  See id.

Also on March 19, 2012, Plaintiff made two payments to Dentistry By Design from his

personal checking account.  One payment was issued on check number 3022 for $200 and

references "Dasina Hoch 8846" in the memo line of the check.  See id. Ex. 4 at 1.  The other

payment was issued on check number 3023 for $500 and references "crowns #9241" in the

memo line of the check.  See id. Ex. 4 at 4.

**B.  Plaintiff's Charges are Added to Dasina Hoch's Account Number 8846**

Plaintiff received services from Dentistry By Design on March 19, April 2, and April 30,

2012.  See id. Ex. 1 at 2.  Plaintiff avers that he never represented to anyone at Dentistry By

Design that he was married to Dasina Hoch.  Hoch Aff. ¶ 11.  Nevertheless, the employees at

Dentistry By Design believed the Hochs were married and therefore also provided services to

Plaintiff at the "Professional Courtesy" discount rate and placed his charges under Dasina

Hoch's account number 8846. Rizvi Aff. ¶¶ 7–8, Ex. 1 at 2. The services provided to Plaintiff

totaled $3,240, which were discounted to $1,713.20. See id. Ex. 1 at 2. Plaintiff avers he never

received a request for payment on his account number 9241 and was never advised by Dentistry

By Design that payments were outstanding for account number 9241. Hoch Aff. ¶ 21. Bills

requesting payment for account number 8846 were issued in Dasina Hoch's name only. See

Hoch Aff. Ex. 1.

**C.  Dentistry By Design Refers Account Number 8846 to Collection**

On or before March 27, 2013, account number 8846 became past due. Rizvi Aff. Ex. 1 at

2. On January 23, 2015, Dentistry By Design referred account number 8846 to Defendant for

collection. Waldron Aff. [Docket No. 27] ¶¶ 4–5, Exs. 5–6.[4] The total amount owed on the

account was $4,307.24. Id. Ex. 6. This amount included all unpaid charges for both Dasina

Hoch and Plaintiff. See Rizvi Aff. Ex. 1; Waldron Aff. Ex. 7.

The collection placement sheet from Dentistry By Design that caused Defendant to

initiate collection activity lists Dasina Hoch as the account debtor. See Waldron Aff. Ex. 5. In

the line provided for a "Spouse/Guarantor's Last Name" an address and phone number are listed.

See id. After the phone number, the words "spouse Dave" are written. See id.

**D.  Defendant Attempts to Collect All Charges from Plaintiff**

On or about January 23, 2015, Defendant sent a debt validation notice to Dasina Hoch

and Plaintiff at the address specified in the collection placement sheet. See Hoch Aff. ¶ 22, Ex.

---

[4] An unsealed, redacted version of Exhibit 6 of the Waldron Affidavit is located in Docket No. 29.

3.  The notice specified a past due amount of $4,307.24 on account number 8846.  Id.  The notice stated that the debt would be assumed valid unless it was disputed in writing within 30 days from when the notice was received.  Id.  There is no evidence that Plaintiff or Dasina Hoch responded to the notice.

On January 31, 2015, Defendant called Plaintiff's cell phone and left a voice message about the debt.  Id. ¶¶ 23–24.  Defendant called Plaintiff's cell phone again on February 13, 18, and 24, but Plaintiff did not answer and Defendant did not leave a message.  Id. ¶¶ 29–30.  On February 26, 2015, Defendant called Plaintiff's cell phone again and Plaintiff answered.  Id. ¶ 21.  Defendant's representative informed Plaintiff that he owed Dentistry By Design more than $4,000, and that the account being collected was in the name of Plaintiff and Dasina Hoch.  Id. ¶¶ 33, 35.  Plaintiff informed Defendant's representative that he was "not on the account" and told the representative to confer with Dentistry By Design about the inaccuracy.  Id. ¶ 36; Waldron Aff. Ex. 6 at 2.  The day after the phone call with Plaintiff, Defendant sent Dentistry By Design a letter recommending that legal action be instituted to enforce the recovery of the debt.  Waldron Aff. Ex. 9.  There is no evidence that Defendant informed Dentistry By Design of Plaintiff's assertion that he was "not on the account."

On or about April 14, 2015, attorney James Roberts sent a demand letter addressed to Plaintiff and Dasina Hoch regarding the $4,307.24 balance owed to Dentistry By Design.  Hoch Aff. ¶ 39, Ex. 5.  On April 15, 2015, Plaintiff received another phone call from Defendant.  Id. ¶ 41.  That evening, Plaintiff sent Defendant an email stating that account number 8846 was associated with his ex-wife and that he did not owe any money on that account.  Waldron Aff. Ex. 7.  He also requested that he be provided with proof of any money owed by him to Dentistry

By Design or to Defendant.  Id.

## E.  Present Lawsuit

Plaintiff filed this action under the FDCPA on May 11, 2015.  Compl. [Docket No. 1].

He alleges that Defendant's efforts to collect from him for Dasina Hoch's dental services

violates § 1692e(2)(A), which prohibits debt collectors from making any "false representation of

. . . the character, amount, or legal status of any debt," and also violates § 1692d(5), which

forbids debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone

conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the

called number."

Defendant filed an Answer [Docket No. 4] denying liability, but did not plead bona fide

error under 15 U.S.C. § 1692k(c) as an affirmative defense.

## F.  Defendant's Summary Judgment Motion

Defendant filed this summary judgment motion on October 13, 2015, more than three

months before discovery was scheduled to close in this case.  See Pretrial Scheduling Order

[Docket No. 12] (setting discovery deadline of January 15, 2016).  The timing of the motion

caused Plaintiff's response to be due before the scheduled depositions of Defendant, Defendant's

employee, and Dentistry By Design.

Defendant argues it is entitled to summary judgment on both of Plaintiff's claims under

the FDCPA.  With respect to the § 1692e(2)(A) claim that Defendant falsely represented that

Plaintiff owed the entire debt, Defendant contends it is not liable because it had a reasonable

belief that Plaintiff was responsible for the debt.  Defendant also contends Plaintiff signed a

guarantee that made him liable in fact for the entire debt owed to Dentistry By Design.

6

As to the § 1692d(5) claim that Defendant caused a telephone to ring or engaged Plaintiff in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass, Defendant argues that the volume and frequency of its contacts with Plaintiff do not reach the level required for a § 1692d(5) violation.

Plaintiff responds that the FDCPA imposes strict liability for violations of § 1692e(2)(A) and thus the reasonableness of Defendant's belief that Plaintiff owed the entire debt is irrelevant. Plaintiff further argues Defendant did not plead the bona fide error defense—a narrow affirmative defense that, if proven, excuses a debt collector from liability—and thus the defense has been waived. Even if the defense were not waived, Plaintiff argues that the bona fide error defense does not apply to mistakes of law such as Defendant's mistaken belief that Plaintiff's "Authorization and Financial Agreement" constituted a personal guarantee of his former spouse's debt.

Plaintiff additionally argues that he is entitled to complete discovery before he can fully respond to Defendant's request for summary judgment. For example, Plaintiff contends that discovery as to Defendant's knowledge and intent when calling Plaintiff is necessary before a dispositive ruling can be made on Plaintiff's § 1692d(5) claim that Defendant acted with the intent to annoy or harass.

**G. Plaintiff's Request for Sanctions Based on Rule 5.2 Violations**

In addition to opposing Defendant's summary judgment motion, Plaintiff requests that sanctions be issued against Defendant for repeatedly violating Federal Rule of Civil Procedure 5.2 by failing to redact private information from court filings. Defendant's Answer included an exhibit with unredacted private information and personal identifiers which the Court upon filing

restricted from public view.  See Text Entry, May 29, 2015 [Docket No. 5].  Defendant refiled

the redacted exhibit at the Court's request.  See Ex. to Ans. [Docket No. 6].  Similarly,

Defendant's summary judgment papers were filed and re-filed with unredacted private

information that included dates of birth, social security numbers, and bank account numbers.

Nowicki Aff. [Docket No. 32] ¶¶ 13–32, Exs. 1–2.  After each filing, Plaintiff's counsel wrote

Defendant's counsel requesting that all identifying information be removed.  See id. Exs. 1–2.

Plaintiff asks the Court to exercise its inherent power to issue sanctions for violations of Rule 5.2

and award Plaintiff attorney's fees for the time it spent addressing this issue.

### III.  DISCUSSION

#### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court views the

evidence in the light most favorable to the nonmoving party, giving the nonmovant the "benefit

of all reasonable inferences to be drawn from the facts."  Schrader v. Royal Caribbean Cruise

Line, Inc., 952 F.2d 1008, 1013 (8th Cir. 1991) (quoting Woodsmith Pub. Co. v. Meredith Corp.,

904 F.2d 1244, 1247 (8th Cir. 1990)).  The nonmoving party may not "rest on mere allegations

or denials but must demonstrate on the record the existence of specific facts which create a

genuine issue for trial."  Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

#### B.  Analysis

##### 1.  Section 1692e(2)(A)

Section 1692e(2)(A) of the FDCPA prohibits a debt collector from falsely representing

"the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Plaintiff alleges

Defendant violated § 1692e(2)(A) by falsely representing that he was liable for his former wife's

dental bills.

Defendant argues it is entitled to summary judgment because it reasonably believed

Plaintiff was responsible for the debt.  However, § 1692e of the FDCPA imposes strict liability

on a debt collector.  Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001).  Thus, a debt

collector's intent is irrelevant unless the debt collector can satisfy the bona fide error defense

under § 1692k(c).  Id. (describing the bona fide error defense as "an exception to the strict

liability imposed upon debt collectors by the FDCPA").

The bona fide error defense provides that "[a] debt collector may not be held liable in any

action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence

that the violation was not intentional and resulted from a bona fide error notwithstanding the

maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C.A. §

1692k(c).  Bona fide error is an affirmative defense to an FDCPA claim and must be asserted in

a defendant's answer or it is deemed to have been waived.  Buzzell v. Citizens Auto. Fin., Inc.,

802 F. Supp. 2d 1014, 1022–23 (D. Minn. 2011); see also Dollar v. Smithway Motor Xpress,

Inc., 710 F.3d 798, 808–09 (8th Cir. 2013) ("[T]he failure to plead [a] particular affirmative

defense results in waiver.").

Here, Defendant chose not to assert the bona fide error defense in its Answer.  Indeed,

Defendant explicitly states in its reply memorandum that "DEFENDANT HAS NOT

INTERPOSED THE BONA FIDE ERROR DEFENSE BECAUSE IT DOES NOT BELIEVE IT

COMMITTED AN ERROR WHEN IT MADE A DEMAND UPON THE PLAINTIFF FOR

THE ACCOUNT IN ISSUE."  Def.'s Mem. Law Supp. Mot. Dismissal II [Docket No. 35] 2

(emphasis in original).  Therefore, the bona fide error defense has been waived.

Even if the bona fide error defense had not been waived, Defendant has failed to show

that the defense is satisfied as a matter of law.  Section 1692k(c) requires a debt collector to

establish:  "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a

bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such

errors."  Yentin v. Michaels, Louis & Assoc., Inc., No. 11-0088, 2011 WL 4104675, at *16 (E.D.

Pa. Sept. 15, 2011) (quoting Beck v. Maximus, Inc., 457 F.3d 291, 297–98 (3d Cir. 2006)).

With respect to the first two elements, Defendant argues that it reasonably believed that

Plaintiff owed the entire debt because: (1) the original creditor, Dentistry By Design, forwarded

the matter to Defendant as a joint account with Plaintiff listed as "Spouse/Guarantor;" (2) the

original creditor believed Plaintiff and Dasina Hoch were married; (3) Plaintiff had regularly

paid for Dasina Hoch's charges; and (4) Plaintiff had signed a guarantee encompassing

"financial responsibility for all charges."  Rizvi Aff. Ex. 3 at 1.

The Court finds that fact issues exist as to whether Defendant's violation was

unintentional, particularly after Plaintiff had informed Defendant that he was "not on the

account."  Despite being alerted to Plaintiff's contention that he was not liable, Defendant

proceeded to seek and obtain Dentistry By Design's permission to sue Plaintiff to collect the

entire amount of the debt.  Viewing this evidence in the light most favorable to Plaintiff, a

reasonable juror could conclude that Defendant's actions were intentional.  Thus, Defendant

cannot meet its summary judgment burden on at least the first element of the bona fide error

defense.  Additionally, the third element of the bona fide error defense has not been satisfied

because Defendant has offered no evidence that it maintained procedures that were designed to avoid the error.

Defendant further argues that Plaintiff is liable for the entire account owed to Dentistry By Design because he signed an Authorization and Financial Agreement in which he agreed to be financially responsible "for all charges."  Rizvi Aff. Ex. 3 at 1.  This argument fails because the Authorization and Financial Agreement cannot be reasonably interpreted as a personal guarantee for Dasina Hoch's charges.  The Agreement does not reference Dasina Hoch or her account and is devoid of any language that could possibly be construed as making Plaintiff a guarantor or obligor for the debts of his ex-wife.[5]  Additionally, Plaintiff's voluntary payments to Dasina Hoch's account did not cause him to become legally obligated for the services she received.

### 2. Section 1692d(5) of the FDCPA

Section 1692d(5) forbids a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  Unlike § 1692e, which does not expressly require intent and is thus a strict liability provision, § 1692d(5) includes explicit language requiring intent.  Zortman v. J.C. Christensen & Assoc., Inc., 819 F. Supp. 2d 874, 879 (D. Minn. 2011).  "[T]here are no bright-line rules as to what constitutes harassment or what demonstrates intent to

---

[5] To the extent Defendant argues that it reasonably but mistakenly interpreted the "Authorization and Financial Agreement" as a personal guarantee of Dasina Hoch's debts, this argument also fails.  The Eighth Circuit has held that a "mistake in legal judgment" or a "'mistake about the law is not protected by' the bona fide error defense."  Picht, 236 F.3d at 451–52 (quoting Hulshizer v. Global Credit Servs., Inc., 728 F.2d 1037, 1038 (8th Cir. 1984) (per curiam)).

annoy." <u>Davis v. Diversified Consultants, Inc.</u>, 36 F. Supp. 3d 217, 228 (D. Mass. 2014). Rather, in making this determination, courts consider the frequency, volume and persistence of the calls, whether the defendant continued to call after the plaintiff asked it to stop, and whether the plaintiff actually owed the alleged debt. <u>Id.</u> Section 1692d "prohibits only oppressive and outrageous conduct." <u>Gearman v. Heldenbrand</u>, No. 15-2039, 2015 WL 5255335, at *4 (D. Minn. Sept. 9, 2015) (quoting <u>Beattie v. D.M. Collections, Inc.</u>, 754 F. Supp. 383, 394 (D. Del. 1991)).

Plaintiff asserts that Defendant violated § 1692d(5) by repeatedly calling him with the intent to annoy, abuse, and harass. Defendant left a voice message on Plaintiff's cell phone on January 31, 2015, attempted to call his cell phone again on February 13, 18, and 24 without leaving a message, and made a fifth call on February 26, 2015—at which time Defendant first learned that Plaintiff disputed the debt. Only one phone call is alleged to have occurred after Plaintiff informed Defendant that he disputed the debt. This call occurred on April 15, 2015, more than a month and a half after Defendant's initial phone conversation with Plaintiff. Under these circumstances, no reasonable jury could conclude that Defendant's behavior was "oppressive and outrageous" or that the calls were intended to abuse or harass Hoch. The six calls occurring over a period of two and a half months is neither oppressive nor abusive. Even affording Plaintiff the benefit of all reasonable inferences, it cannot be reasonably inferred that the small number of calls and benign pattern of the calls meet the level of "oppressive and outrageous" conduct required under § 1692d. Additional discovery by the Plaintiff as to Defendant's intent will not alter the conclusion that Defendant's conduct was not sufficiently abusive to constitute a violation of § 1692d(5). Therefore, Defendant is entitled to summary

judgment on this claim.

**C.  Plaintiff's Request for Sanctions**

Plaintiff argues the Court should impose sanctions on Defendant for violating Rule 5.2 on three separate occasions and requests that the Court award Plaintiff attorney fees for the time his counsel unjustifiably incurred in addressing the violations.  Although the Court recognizes the serious privacy concerns that arise whenever Rule 5.2 is violated, sanctions will not be imposed for Defendant's past violations.  The attorney fees in this case are already likely to far exceed the amount at issue, and the Court is unwilling to further add to those fees.  As it did at the hearing, the Court strongly encourages the parties to settle this matter without further litigation and its attendant costs.  The parties are required to schedule and participate in a second settlement conference with Magistrate Judge Brisbois before filing any further motions or proceedings in this case.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 23] is **GRANTED IN PART and DENIED IN PART** as follows**:**

1.    Summary judgment is DENIED as to Plaintiff's claim under 15 U.S.C. § 1692e(2)(A);

2.    Summary judgment is GRANTED as to Plaintiff's claims under 15 U.S.C. § 1692d(5); and

3.    Plaintiff's request for sanctions is DENIED; and

4.      If the parties are unable to resolve this matter independently, they shall schedule and

participate in a second settlement conference with Magistrate Judge Brisbois before

further pleadings or motions are filed in this case.

BY THE COURT:


            s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 1, 2016.

14